1

2

3

4   TERESA A. SHERMAN
    Attorney for Plaintiffs
5   Sherman Law Office, PLLC
    1212 N. Washington, Suite 210
6   Spokane, WA 99201
    509-324-3331
7   Fax: 509-324-3364

8                    UNITED STATES DISTRICT COURT,

9                   WESTERN DISTRICT OF WASHINGTON

10

11  VERDANT HEALTH COMMISSION dba           )
    STEVENS HEALTHCARE                       )   No.
12  Edmonds, Washington                      )
                                             )
13                                           )   COMPLAINT FOR JUDICIAL
    PROVIDENCE HEALTH & SERVICES-            )   REVIEW; DECLARATORY AND
14  WASHINGTON, formerly dba PROVIDENCE      )   INJUNCTIVE RELIEF; AND FOR
    YAKIMA MEDICAL CENTER                    )   SUMS DUE UNDER MEDICARE
15  Yakima, Washington                       )   LAW
                                             )
16                                           )
    PROVIDENCE HEALTH & SERVICES-            )
17  WASHINGTON, dba PROVIDENCE REGIONAL      )
18  MEDICAL CENTER EVERETT                   )
    Everett, Washington                      )
19                                           )
                                             )
20  PROVIDENCE HEALTH & SERVICES-            )
    WASHINGTON, dba PROVIDENCE CENTRALIA     )
21  HOSPITAL                                 )
22  Centralia, Washington                    )
                                             )
23  PROVIDENCE HEALTH & SERVICES-            )
    WASHINGTON, dba PROVIDENCE ST. PETER     )
24  HOSPITAL                                 )
25  Olympia, Washington                      )
                                             )
26  ─────────────────────────────────────────

27

28                                               **Sherman Law Office, PLLC**
                                                 1212 N. Washington
                                                 Rock Pointe, Suite 210
29  Complaint:  Page 1                           Spokane, WA 99201
                                                 (509) 324-3331
                                                 Facsimile (509) 324-3364

1   YAKIMA VALLEY MEMORIAL HOSPITAL                    )
2   Yakima, Washington                                 )
                                                       )
3   HARRISON MEDICAL CENTER                            )
4   Bremerton, Washington                              )
                                                       )
5   PEACEHEALTH SOUTHWEST MEDICAL                      )
    CENTER                                             )
6   Vancouver, Washington                              )
                                                       )
7                                                      )
    PROVIDENCE HEALTH & SERVICES-                      )
8   WASHINGTON, dba PROVIDENCE SACRED                  )
9   HEART MEDICAL CENTER                               )
    Spokane, Washington                                )
10                                                     )
11  KADLEC REGIONAL MEDICAL CENTER                     )
    Richland, Washington                               )
12                                                     )
13  HARBORVIEW MEDICAL CENTER                          )
    Seattle, Washington                                )
14                                                     )
15  PROVIDENCE HEALTH & SERVICES-                      )
    WASHINGTON, dba PROVIDENCE HOLY                    )
16  FAMILY HOSPITAL                                    )
    Spokane, Washington                                )
17                                                     )
18  MULTICARE HEALTH SYSTEM dba                        )
    MULTICARE GOOD SAMARITAN HOSPITAL                  )
19  Puyallup, Washington                               )
                                                       )
20                                                     )
    FRANCISCAN HEALTH SERVICES, dba                    )
21  ST. JOSEPH MEDICAL CENTER                          )
    Tacoma, Washington                                 )
22                                                     )
23  MULTICARE HEALTH SYSTEM dba                        )
    MULTICARE ALLENMORE HOSPITAL                       )
24  Tacoma, Washington                                 )
                                                       )
25                                                     )
    _____        )
26

27

28

29  Complaint: Page 2

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

1    FRANCISCAN HEALTH SERVICES, dba                )
     ST. FRANCIS HOSPITAL                           )
2    Federal Way, Washington                        )
                                                    )
3    UNIVERSITY OF WASHINGTON MEDICAL               )
     CENTER                                         )
4    Seattle, Washington                            )
                                                    )
5                                                   )
     SKAGIT VALLEY HOSPITAL                         )
6    Mt. Vernon, Washington                         )
                                                    )
7                                                   )
     OLYMPIC MEDICAL CENTER                         )
8    Port Angeles, Washington                       )
                                                    )
9                                                   )
     CENTRAL WASHINGTON HOSPITAL                    )
10   Wenatchee, Washington                          )
                                                    )
11                                                  )
     FRANCISCAN HEALTH SERVICES, dba                )
12   ST. CLARE HOSPITAL                             )
     Tacoma, Washington                             )
13                                                  )
                                                    )
14   EMPIRE HEALTH FOUNDATION, fka                  )
     DEACONESS MEDICAL CENTER                       )
15   Spokane, Washington                            )
                                                    )
16                                                  )
     EMPIRE HEALTH FOUNDATION, fka                  )
17   VALLEY HOSPITAL MEDICAL CENTER                 )
     Spokane, Washington                            )
18                                                  )
                                                    )
19   PROVIDENCE HEALTH & SERVICES-                  )
     WASHINGTON, dba PROVIDENCE ST. MARY            )
20   MEDICAL CENTER                                 )
     Walla Walla, Washington                        )
21                                                  )
                                                    )
22   SWEDISH HEALTH SERVICES, dba                   )
     SWEDISH MEDICAL CENTER                         )
23   Seattle, Washington                            )
                                                    )
24                                                  )
                                                    )
25                                                  )
                                                    )
26   _____   )

27

28

29   Complaint:  Page 3

**Sherman Law Office, PLLC**
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

SWEDISH HEALTH SERVICES, dba                    )
SWEDISH MEDICAL CENTER CHERRY HILL              )
Seattle, Washington                             )
                                                )
                    Plaintiffs,                 )
                                                )
                                                )
                                                )
        vs.                                     )
                                                )
KATHLEEN SEBELIUS                               )
Secretary of the United States Department of Health )
and Human Services                              )
                                                )
                    Defendant.                  )
_____)

The above-named Plaintiffs ("Plaintiffs"), by and through their undersigned counsel, state

the following in the form of this Complaint against KATHLEEN SEBELIUS, Secretary of the

United States Department of Health and Human Services (the "Secretary"):

# I. __INTRODUCTION__

1.      Plaintiffs (also referred to hereinafter individually as a "Hospital" or collectively

as the "Hospitals"), (for the periods of time at issue) consist of twenty-six (26) not-for-profit, or

quasi-public hospitals that participated in the Medicare and Medicaid programs.  They bring this

action pursuant to 42 U.S.C. §1395 et seq. (the "Medicare Statute"), the Administrative

Procedures Act ("APA"), 5 U.S.C. §§551 et seq., and the Fourteenth Amendment to the United

States Constitution.

Complaint:  Page 4

**Sherman Law Office, PLLC**
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

2.     The Hospitals challenge a final Administrative Decision of the Secretary, acting through the Administrator of the Centers for Medicare and Medicaid Services ("CMS") that denied certain Medicare reimbursement to the Hospitals under 42 U.S.C. §1395ww(d)(5)(F), known as the Disproportionate Share Hospital ("DSH") Statute.    This Statute directs the Secretary to make additional Medicare payments to hospitals that serve "a significantly disproportionate number of low-income patients."   42 U.S.C. §1395ww(d)(5)(F)(i)(I).   Under this Statute, the DSH calculation must include all of the Hospitals' "patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State Plan approved under subchapter Title XIX of this chapter, but who were not entitled to [Medicare Part A benefits]."   42 U.S.C. §1395ww(d)(5)(F)(vi)(II).   The Secretary, acting through the Administrator of CMS, violated the provisions of the Medicare DSH Statute in her decision dated November 27, 2013, by refusing to allow the Hospitals to include in the DSH calculation those patient days under Washington State's Medically Indigent Disproportionate Share Hospital ("MIDSH") program and General Assistance—Unemployable Disproportionate Share Hospital ("GAUDSH") program.   The MIDSH and GAUDSH programs were part of the Washington State Medicaid State Plan approved under Title XIX of the Social Security Act.

3.     The Secretary amended the Medicare DSH regulations (42 C.F.R. §412.106(b)(4)) in January 2000 to expressly disavow any need for patients in §1115 waiver states to be "Medicaid eligible" as a pre-condition to their inpatient days being counted for purposes of a hospital's Medicare DSH payment.   In so doing, the Secretary necessarily concluded that

Complaint: Page 5

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

Congress did not mandate that a patient must be eligible for traditional Medicaid benefits on a hospital day in order for that day to be included in the numerator of the fraction set forth in 42 U.S.C. §1395ww(d)(5)(F)(vi)(II). This approach, instead, relied on whether services were federally funded under Title XIX as the touchstone of whether they qualify as days of medical assistance, consistent with the decision in <u>Portland Adventist Medical Center v. Thompson</u>, 399 F.3d 1091 (9th Cir. 2005). However, the Secretary continued after reinterpreting the Medicare DSH statute to exclude all days attributable to indigent patients who are eligible for medical assistance under Washington's Title XIX State Plan – MIDSH and GAUDSH programs, because these patients are not "eligible for Medicaid" (i.e. not categorically needy or medically needy).

4. The Secretary's decision, to the extent it precludes Medicare DSH payments based on patient days attributable to Washington State's MIDSH and GAUDSH programs, contravenes the plain and unambiguous language of the governing Medicare statute, is inconsistent with clear Congressional intent, patently unreasonable, violative of equal protection guarantees without a rational basis, and is arbitrary, capricious, and otherwise contrary to law.

## II. **JURISDICTION AND VENUE**

5. This Court has jurisdiction under 42 U.S.C. §1395oo(f)(1), to review a final decision of the Secretary of Health and Human Services that affirms, modifies, or reverses a decision of the Provider Reimbursement Review Board. The final decision of the Secretary was dated November 27, 2013, and received by the Plaintiffs on December 12, 2013; as a result, this action is timely within the limitations periods in 42 U.S.C. §1395oo(f)(1).

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

6.     This Court also has jurisdiction pursuant to 28 U.S.C. §1331.

7.     Pursuant to 42 U.S.C. §1395oo(f)(1), venue in an action brought jointly by several providers or hospitals is proper in the judicial district in which the greatest number of such providers are located.  The majority of the twenty-six (26) hospital providers which are Plaintiffs in this action are located in the judicial district for Western Washington.

8.     The Court is authorized to issue declaratory and other appropriate relief against Defendant under 28 U.S.C. §§2201, 2202.

### III. PARTIES

9.     Plaintiff Hospitals are health care providers located in the State of Washington that served a disproportionate share of low-income patients during the fiscal years at issue, 1994 through 2007.  At all relevant times, each of the Plaintiff Hospitals had Medicare provider agreements with the Secretary of Health and Human Services and were eligible to participate in the Medicare program.

10.     Plaintiff, University of Washington Medical Center, 1959 N.E. Pacific Street, Seattle, WA 98195, is a short-term acute care hospital assigned Medicare Provider No. 50-0008, with this action covering its fiscal years of 2001, 2002, 2003 and 2006.

11.     Plaintiff, Providence Health & Services-Washington, formerly dba Providence Yakima Medical Center, 110 S. 9th Avenue, Yakima, WA 98902, is a short-term acute care hospital assigned Medicare Provider No. 50-0012, with this action covering its fiscal years 1996, 1997, 1998, 2000, 2001, 2002 and 2003.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

12.     Plaintiff, Providence Health & Services-Washington dba Providence Regional Medical Center Everett, (formerly known as Providence General Medical Center), 1321 Colby Avenue, Everett, WA 98206, is a short-term acute care hospital assigned Medicare Provider No. 50-0014, with this action covering its fiscal years 1996, 1997, 1998, 2000, 2001, 2002, 2003, 2004 and 2005.

13.     Plaintiff, Providence Health & Services-Washington dba Providence Centralia Hospital, 914 S. Scheuber Rd., Centralia, WA 98531, is a short-term acute care hospital assigned Medicare Provider No. 50-0019, with this action covering its fiscal year 2000.

14.     Plaintiff, Providence Health & Services-Washington dba Providence St. Peter Hospital, 413 Lilly Road NE, Olympia, WA 98506, is a short-term acute care hospital assigned Medicare Provider No. 50-0024, with this action covering its fiscal years 1994, 1995, 1996, 1997, 1998, 2000, 2001, 2002, 2003, 2004, 2005 and 2006.

15.     Plaintiff, Verdant Health commission dba Stevens Healthcare (formerly known as Stevens Memorial Hospital), 21601 76th Avenue W., Edmonds, WA 98026, is a short-term acute care hospital assigned Medicare Provider No. 50-0026, with this action covering its fiscal years 1994, 1995, 1996, 1997, 2000, 2001, 2003, 2004, 2005 and 2006.

16.     Plaintiff, Yakima Valley Memorial Hospital, 2811 Tieton Drive, Yakima, WA 98902, is a short-term acute care hospital assigned Medicare Provider No. 50-0036, with this action covering its fiscal years 2000, 2001, 2002 and 2003.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

17.    Plaintiff, Harrison Medical Center (formerly known as Harrison Memorial Hospital), 2520 Cherry Avenue, Bremerton, WA 98310-4270, is a short-term acute care hospital assigned Medicare Provider No. 50-0039, with this action covering its fiscal years 1995, 1998, 2001, 2002, 2003, 2004, 2005, 2006 and 2007.

18.    Plaintiff, PeaceHealth Southwest Medical Center (formerly known as Southwest Washington Medical Center), 400 NE Mother Joseph Place, Vancouver, WA 98664, is a short-term acute care hospital assigned Medicare Provider No. 50-0050, with this action covering its fiscal years 1994, 1995, 1996, 1997, 1998, 2001, 2002, 2003, 2004, 2005 and 2006.

19. .   Plaintiff, Providence Health & Services-Washington dba Providence Sacred Heart Medical Center (formerly known as Sacred Heart Medical Center), 101 West Eighth Avenue, Spokane, WA 99220-2555, is a short-term acute care hospital assigned Medicare Provider No. 50-0054, with this action covering its fiscal years 1995, 1996, 1998, 2000, 2001, 2002, 2003, 2004, 2005 and 2006.

20.    Plaintiff, Kadlec Regional Medical Center (formerly known as Kadlec Medical Center), 888 Swift Boulevard, Richland, WA 99352-3542, is a short-term acute care hospital assigned Medicare Provider No. 50-0058, with this action covering its fiscal years 1998, 2000, 2001, 2002, 2003, 2004, 2005 and 2006.

21.    Plaintiff, Harborview Medical Center, 325 Ninth Avenue, Seattle, WA 98104-2499, is a short-term acute care hospital assigned Medicare Provider No. 50-0064, with this action covering its fiscal years 1992, 1993, 2001, 2002, 2003, 2004, 2005 and 2006.

**Sherman Law Office, PLLC**
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

22.     Plaintiff, Providence Health & Services-Washington dba Providence Holy Family Hospital (formerly known as Holy Family Hospital), N. 5633 Lidgerwood St., Spokane, WA 99208, is a short-term acute care hospital assigned Medicare Provider No. 50-0077, with this action covering its fiscal years 1994, 1995, 1996, 1997, 1998, 2000, 2001, 2002, 2003, 2004, 2005 and 2006.

23.     Plaintiff, Multicare Health System dba Multicare Good Samaritan Hospital, 407 – 14th Avenue S.E., Puyallup, WA 98372-0118, is a short-term acute care hospital assigned Medicare Provider No. 50-0079, with this action covering its fiscal years 2000, 2001, 2002, 2003, 2004, 2005 and 2006; and Medicare Provider No. 50-T079, with this action covering fiscal years 2004, 2005 and 2006.

24.     Plaintiff, Franciscan Health Services, dba St. Joseph Medical Center, 1717 South "J" Street, Tacoma, WA 98405, is a short-term acute care hospital assigned Medicare Provider No. 50-0108, with this action covering its fiscal years 1996, 1997, 1998, 1999, 2001, 2002, 2003, 2004 and 2005.

25.     Plaintiff, Multicare Health System dba Multicare Allenmore Hospital, 315 Martin Luther King, Jr. Way, Tacoma, WA 98405, is a short-term acute care hospital assigned Medicare Provider No. 50-0129, with this action covering its fiscal years 1994, 1997, 1998, 2000, 2001, 2002, 2003, 2004 and 2005.

26.     Plaintiff, Franciscan Health Services, dba St. Francis Hospital, 34515 – 9th Avenue South, Federal Way, WA 98003-6799, is a short-term acute care hospital assigned

Complaint: Page 10

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

Medicare Provider No. 50-0141, with this action covering its fiscal years 1997, 1998, 1999, 2001, 2002, 2003, 2004, 2005 and 2006.

27.    Plaintiff, Skagit Valley Hospital, (formerly known as Skagit Valley United General Hospital) 2000 Hospital Drive, Sedro-Woolley, WA 98284, is a short-term acute care hospital assigned Medicare Provider No. 50-0003, with this action covering its fiscal years 1995, 1996 and 1997.

28.    Plaintiff, Olympic Medical Center, 939 Caroline Street, Port Angeles, WA 98362, is a short-term acute care hospital assigned Medicare Provider No. 50-0072, with this action covering its fiscal years 2004 and 2005.

29.    Plaintiff, Central Washington Hospital, 1201 S. Miller Street, Wenatchee WA 98801, is a short-term acute care hospital assigned Medicare Provider No. 50-0016, with this action covering its fiscal year 2006.

30.    Plaintiff, Franciscan Health Services, dba St. Clare Hospital, 11315 Bridgeport Way SW, Lakewood WA 98499, is a short-term acute care hospital assigned Medicare Provider No. 50-0021, with this action covering its fiscal years 2001, 2003, 2004, 2005, 2006 and 2007.

31.    Plaintiff, Swedish Health Services, dba Swedish Medical Center Cherry Hill, 747 Broadway, Seattle, WA 98122, is a short-term acute care hospital assigned Medicare Provider No. 50-0025, with this action covering its fiscal years 1994, 1996, 1997, 1998, 1999, 2000, 2001, 2002 and 2006.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

32.    Plaintiff, Empire Health Foundation, formerly known as Deaconess Medical Center, 111 North Post St., Spokane, WA 99201, is a short-term acute care hospital assigned Medicare Provider No. 50-0044, with this action covering its fiscal years 1999, 2000 and 2004.

33.    Plaintiff, Empire Health Foundation, formerly known as Valley Hospital and Medical Center, 111 North Post St., Spokane, WA 99201, is a short-term acute care hospital assigned Medicare Provider No. 50-0119, with this action covering its fiscal years 2002, 2003 and 2004.

34.    Plaintiff, Providence Health & Services-Washington dba Providence St. Mary Medical Center, 401 W. Poplar Street, Walla Walla WA 99362, is a short-term acute care hospital assigned Medicare Provider No. 50-0002, with this action covering its fiscal year 2005.

35.    Plaintiff, Swedish Health Services dba Swedish Medical Center, 1600 E. Jefferson Street, Seattle WA 98122, is a short-term acute care hospital assigned Medicare Provider No. 50-0027, with this action covering its fiscal years 1994, 1995, 1996, 1997, 1998, 2000, 2001, 2002, 2003, 2004, 2005 and 2006.

36.    Defendant, Kathleen Sebelius is the Secretary of the Department of Health and Human Services, 200 Independence Avenue, S.W., Washington D.C. 20201, the federal agency responsible for the administration of the Medicare and Medicaid Programs.

## IV.  **THE MEDICARE PROGRAM**

37.    Congress enacted the Medicare Program (Title XVIII of the Social Security Act) in 1965.  As originally enacted, Medicare was a public health insurance program that furnished

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

health benefits to the aged, blind and disabled. Over the years, the scope of benefits and covered individuals has been expanded.

38.    Among the benefits covered by Medicare are inpatient hospital services. For cost reporting years beginning prior to October 1, 1983, the Medicare Program reimbursed inpatient hospital services on a "reasonable cost" basis. 42 U.S.C. §1395f(b). Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted a prospective payment system ("PPS") to reimburse most acute care hospitals, including Plaintiffs, for inpatient operating costs. 42 U.S.C. §1395ww(d). Under PPS, hospitals are paid a fixed amount for services rendered based upon diagnosis-related groups ("DRGs"), subject to certain payment adjustments as determined by Congress or the Secretary.

39.    The Secretary has delegated much of the responsibility for administering the Medicare Program to CMS, which was formerly known as the Health Care Financing Administration (herein collectively referred to as "CMS"). The Secretary, through CMS, contracted out many of the audit and payment functions for inpatient hospital care furnished to Medicare program beneficiaries to organizations known as fiscal intermediaries. 42 U.S.C. §1395h.

40.    At the close of the fiscal year, a hospital provider of services must submit to its fiscal intermediary a cost report showing the allowable costs incurred and amounts due from Medicare for the fiscal year and the payments received from Medicare. The fiscal intermediary is required to audit the cost report and inform the hospital provider of a final determination of the

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

amount of Medicare reimbursement through a Notice of Program Reimbursement ("NPR"). 42 CFR §405.1803.

41.    A hospital provider dissatisfied with its fiscal intermediary's determination may file an appeal to the Provider Reimbursement Review Board ("PRRB") within 180 days of the notice of the intermediary's final determination. 42 U.S.C. §1395oo(a).

42.    The decision of the PRRB is a final administrative decision, unless the Secretary, through the Administrator of CMS, reviews the PRRB's decision; the Administrator may reverse, affirm or modify the PRRB's decision. 42 U.S.C. §1395oo(f). When the Administrator grants review, the matter is considered de novo. In affirming, modifying or reversing the PRRB, the Administrator is free to consider facts and arguments not considered by the PRRB. 42 C.F.R. §405.1875. If the Administrator issues a timely decision on review, that decision becomes the final decision of the Secretary. 42 U.S.C. §1395oo(f).

43.    A provider has the right to obtain judicial review of any final decision of the PRRB, or of the Secretary, by filing a civil action within 60 days of the date on which notice of any final decision by the PRRB, or of any reversal, affirmance, or modification by the Secretary, is received. 42 U.S.C. §1395oo(f).

## V. THE MEDICAID PROGRAM

44.    Congress enacted the Medicaid program ("Title XIX" of the Social Security Act) in 1965. Under Title XIX , federal matching funds are paid to states to offset at least half of the

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

expenses incurred in furnishing medical assistance to eligible low-income individuals. See 42 U.S.C. §1396, et seq.

45.     "Medical assistance" is defined under Title XIX of the Social Security Act to include payment of inpatient and outpatient hospital services to individuals who do not have the income and resources to pay for those services. 42 U.S.C. §1396d(a). Expenditures for medical assistance that are made under a Medicaid State Plan that has been approved by the Secretary are eligible for matching federal payments, known as Federal Financial Participation ("FFP"). 42 U.S.C. §1396, 1396d(a) – (b). In the Affordable Health Care Act, Congress "clarified" the meaning of "medical assistance" under Title XIX as specifically meaning "payment of the cost of [specified] … care and services [including inpatient hospital services] or the care or services themselves or both," amending 42 U.S.C. §1396d(a).

46.     States participating in the Medicaid program have substantial discretion in determining the benefits provided under its Medicaid programs and in affording optional coverages to various categories of persons. 42 U.S.C. §1396d. Nevertheless, all states must furnish certain minimum benefits under its Medicaid programs, including inpatient hospital services. 42 U.S.C. §§1396a(a)(10)(A), 1396d(a)(1).

47.     States also have flexibility in establishing payment rates for hospital services under its Medicaid programs. 42 U.S.C. §1396a(a)(13)(A).

48.     States that participate in the Medicaid program are required to develop a State Plan for delivery of medical assistance and submit it to the Secretary for approval. 42 U.S.C.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

§1396. The State Plan must comply with certain requirements of the Medicaid statute set forth in 42 U.S.C. §1396a to be approved. Once the State Plan is approved, the state is eligible to receive FFP for furnishing covered items and services under that State Plan. For any given year, the amount of the FFP payment cannot be less than 50% of the cost of covered expenditure under the State Plan.

49. The State of Washington, at all relevant times referred to in this Complaint, had a valid Title XIX State Plan approved by the Secretary.

## VI. **WASHINGTON STATE'S MI AND GAU PROGRAMS**

50. The Limited Casualty Program—Medically Indigent ("MI") originated in Washington State legislation to provide temporary medical assistance, including inpatient hospital services, to persons meeting low-income eligibility criteria who have an emergency medical condition.

51. Prior to December 1, 1991, the MI Program was entirely funded by the State of Washington. Effective December 1, 1991, however, the Medically Indigent Disproportionate Share Hospital ("MIDSH") Program was added to Washington State's Medicaid State Plan approved under Title XIX pursuant to State Plan Amendment TN 91-30, and as a result the funding for this program was "federalized" under Title XIX and was not solely state funded.

52. State Plan Amendment TN 91-30 was approved by the Regional CMS Office pursuant to its delegated authority from the Secretary and the CMS Administrator on November 30, 1992. [Exhibit "A" attached hereto is a copy of the relevant portion of the State Plan

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

Amendment.] The provisions related to the MIDSH Program were not significantly changed by subsequent amendments to the State Plan for the cost reporting periods at issue in this action. TN 91-30 provides for specific payments for inpatient services on account of particular MI beneficiaries at rates that are based on an adjustment of the regular Medicaid rates paid on account of the state's traditional Medicaid eligible medical assistance enrollees.

53.    The General Assistance—Unemployable ("GAU") Program also originated in Washington State legislation to provide cash grants and medical assistance to persons meeting low-income eligibility criteria who are physically and/or mentally incapacitated and unemployable for more than 90 days (but had not qualified for Social Security Disability Benefits).

54.    Prior to October 1, 1992, the GAU Program was entirely funded by the State of Washington.    Effective October 1, 1992, the General Assistance—Unemployable Disproportionate Share Hospital ("GAUDSH") Program was added to the Washington State Medicaid Plan approved under Title XIX pursuant to State Plan Amendment TN 92-25. The Plan Amendment TN 92-25 was approved by the Regional CMS Office pursuant to its delegated authority from the CMS Administrator on May 26, 1993. [Exhibit "A" is a copy of the relevant portion of this State Plan Amendment].    As a result the funding for this program was "federalized" under Title XIX and was not solely state funded.    Subsequent Amendments to the Washington State Title XIX Plan did not impact the GAUDSH Program for the cost reporting periods at issue in this Complaint.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

55.     The MIDSH and GAUDSH Program benefits included inpatient hospitalization, in essentially the same manner as other medical care services for traditional Medicaid-eligible medical assistance recipients.

56.     Individuals in the MI and GAU Programs are certified by the Department of Social and Health Services in the State of Washington for their eligibility for medical assistance under these programs.  The income and resource eligibility criteria for the MI Program are essentially the same as the income and resource eligibility requirements for the Medically Needy component of the State's Medicaid Program.  The income and resource requirements for eligibility for GAU clients are substantially the same as the income and resource requirements for Categorically Needy clients in the Washington State Medicaid Program.

57.     There are seven (7) means-tested (individuals must meet specific income and resource requirements) medical assistance programs in Washington state.  Both the MIDSH and GAUDSH programs are amongst these seven (7) medical assistance programs.

58.     Hospitals in Washington State billed the Department of Social and Health Services for individual specific inpatient hospital services provided to MI and GAU patients.

A.  MIDSH and GAUDSH Program claims were paid on a per claim basis utilizing the Washington Department of Social and Health Services DRG (i.e., Diagnosis Related Grouping) based reimbursement system.  The DRG payments were patient specific.  Claims for the MIDSH and GAUDSH Programs also were paid on the same remittance advice, utilizing the same DRG

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

relative cost weight as those for Categorically Needy and Medically Needy Programs in the State of Washington.

B.  Hospitals are reimbursed for the MIDSH and GAUDSH Program claims using the same basic methodology employed for reimbursement of Categorically Needy and Medically Needy claims.  The methodology entails multiplying a hospital facility rate by a DRG weight for the specific discharge.  Categorically Needy and Medically Needy patient claims would be paid using a higher federal facility rate, where MIDSH and GAUDSH patient claims are paid at a lower (discounted) federal facility rate.

59.  For the cost reporting periods of 1994 through 2006, the State of Washington routinely included the MI and GAU inpatient days in the calculation of the "Medicaid Inpatient Utilization Rate" (MIPUR) as referenced in Section 1923(b)(2) of the Social Security Act for the purpose of determining whether or not to deem a hospital as a Disproportionate Share Hospital. The term "Medicaid Inpatient Utilization Rate" is defined as:

> a fraction (expressed as a percentage), the numerator of which is the hospital's number of inpatient days attributable to patients who (for such days) were eligible for medical assistance under a State plan approved under this title in a period (regardless of whether such patients receive medical assistance on a fee-for-service basis or through a managed care entity), and the denominator of which is the total number of the hospital's inpatient days in that period.

42 U.S.C. §1396r-4(b)(2).  Therefore, the State of Washington considered MI and GAU patient days to be "attributable to patients who (for such days) were eligible for medical assistance under a State plan approved under this title . . ."

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

60.    The State of Washington reported inpatient hospitalization costs associated with its covered programs and expenditures pursuant to 42 U.S.C. §1396 and §1903 of the Social Security Act, and claimed FFP payments from the Secretary on the basis of those reports.    The inpatient hospital costs associated with MIDSH and GAUDSH Programs were included along with the inpatient hospital service costs associated with the Categorically Needy and Medically Needy Programs on the CMS-64 report form.    Only costs that are related to the Title XIX State Medicaid plan can be reported on the CMS-64 form.

61.    As a result, matching FFP payments were equally made to Washington State for the costs of the Categorically Needy, Medically Needy, MIDSH and GAUDSH Program claims for the cost reporting periods included in this Complaint. On information and belief, the Department of Health and Human Services has not denied any claims for FFP filed by the State of Washington that include inpatient hospital costs associated with the MIDSH and GAUDSH programs.

## VII.    THE MEDICARE DISPROPORTIONATE SHARE PAYMENT ADJUSTMENT

62.    In 1986, Congress amended Title XVIII of the Social Security Act to require the Secretary to make additional payments to hospitals that serve "a significantly disproportionate number of low-income patients . . . ." 42 U.S.C. §1395ww(d)(5)(F)(i)(I).    Eligibility for these "disproportionate share" (DSH) payments, and the level of these payments, is based on the calculation of a "disproportionate share percentage" that considers the number of low-income patients a hospital serves. See 42 U.S.C. §§1395ww(d)(5)(F)(v) and (vi).

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

63.    As the Ninth Circuit observed in <u>Portland Adventist Medical Ctr. v. Thompson</u>, 399 F.3d 1091, 1095 (9th Cir. 2005) (quoting <u>Legacy Emanuel Hosp. & Health Ctr. v. Shalala</u>, 97 F.3d 1261, 1265 (9th Cir. 1996)):

> Congress "overarching intent" in passing the [Medicare] disproportionate share provision was to supplement the prospective payment system payments of hospitals serving "low income" persons . . . Congress intended the Medicare and Medicaid fractions to serve as a proxy for all low-income patients.

64.    To be eligible for the DSH payment, a hospital must meet certain systemic criteria, including a disproportionate patient percentage" exceeds the threshold.  The amount of the DSH payment then depends upon the extent to which the "disproportionate patient percentage exceeds the threshold.

65.    The disproportionate patient percentage is statutorily defined as the sum of two fractions expressed as a percentage for a hospital's cost reporting period.  These fractions are often colloquially referred to as the "Medicare Low-Income Proxy" and the "Medicaid Low-Income Proxy," respectively, and are defined as follows:

> (i)    The fraction (expressed as a percentage) the numerator of which is the hospital's patient days for such period which were made up of patients who (for such dates) were entitled to benefits under Part A of this Title and were entitled to supplemental security income benefits (excluding any state supplementation) under Title XVI of this Act and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this Title.
>
> . . .
>
> (2)    The fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were eligible for medical assistance under a State plan approved under Title XIX of this chapter, but who were not entitled to

Complaint: Page 21

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

benefits under Part A of this Title, and the denominator of which is the total number of the hospital patient days for such period.

42 U.S.C. §1395ww(d)(5)(F)(vi).

66.     It is only the Non-Medicare – or the "Medicaid Low-Income Proxy" - portion of the formula for calculating the DSH adjustment that is at issue in this action.  The larger the number of patient days for patients who are "eligible for medical assistance under a State Plan approved under subchapter XIX," and included in the numerator of this fraction, the larger the Medicare DSH adjustment for the provider.

67.     The Secretary implemented the Medicare DSH provisions through 42 C.F.R. § 412.106(b)(4).  Eligibility for Medicaid for purposes of the DSH formula is defined under the regulation by referencing eligibility for medical assistance under an approved Medicaid State Plan as follows:

> Second computation.  The fiscal intermediary determines, for the same cost reporting period used for the first computation, the number of the hospital's patient days of service for which patients were eligible for Medicaid but not entitled to Medicare Part A, and divides that number by the total number of patient days in the same period.  For purposes of this second computation, the following requirements apply:
>
> (i)     For purposes of this computation, a patient is deemed eligible for Medicaid on a given day only if the patient is *eligible for inpatient hospital services under an approved State Medicaid plan* or under a waiver authorized under Section 1115(a)(2) of the Act on that day, regardless of whether particular items or services were covered or paid under the State plan or the authorized waiver.
>
> (ii)     Effective with discharges occurring on or after January 20, 2000, for purposes of counting days under paragraph (b)(4)(i) of this section, hospitals may include all days attributable to populations eligible for Title XIX matching

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

payments through a waiver approved under Section 1115 of the Social Security Act.

(iii)    The hospital has the burden of furnishing data adequate to prove eligibility for each Medicaid patient day claimed under this paragraph, and of verifying with the State that a patient was eligible for Medicaid during each claimed patient hospital day. (Emphasis added.)

68.    The term "State plan" is defined at 42 C.F.R. §430.10 as:

The State plan is a comprehensive written statement submitted by the agency describing the nature and scope of its Medicaid program and giving assurance that it will be administered in conformity with the specific requirements of title XIX, the regulations of this Chapter VI and other applicable official issuances of the Department.  The State plan contains all information necessary for CMS to determine whether the plan can be approved to serve as the basis for Federal Financial Participation (FFP) in the State Program.

69.    CMS purportedly "clarified" its regulatory interpretations of the Medicare DSH calculation in December 1999 through the issuance of Program Memorandum (PM) A-99-62. CMS recognized that all inpatient days funded under a state medical assistance plan previously had been routinely recognized by hospitals and Medicare fiscal intermediaries as days of "medical assistance."  However, CMS took the position in PM A-99-62 that, going forward and beginning on October 15, 1999 inpatient days covered under a State Plan through Medicaid DSH adjustments could *not* be counted in the Medicare DSH percentage calculation, and that the statutory "focus [was] on the patient's eligibility for Medicaid benefits."

70.    Having recognized that hospitals and fiscal intermediaries had not previously distinguished among medical assistance days funded through a State Plan on the basis of the patients' eligibility for traditional Medicaid, PM A-99-62 "grandfathered" the inclusion of

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

"General Assistance" (or "GA") and similar "charity care" days in the Medicare DSH calculation for cost reporting periods beginning before January 1, 2000. The Secretary reaffirmed this position in the Federal Register on August 1, 2000, 65 Fed. Reg. 47054, 47087, while simultaneously acknowledging "that these [GA] days may be included in the calculation of a State's Medicaid DSH payments" under an approved State Plan.

71.    The Secretary has a fiscal policy of limiting Medicare reimbursement to hospitals. An analysis of CMS Administrator decisions (Exhibit P-12 to Plaintiffs' Position Paper in the Administrative record) demonstrates the Secretary's bias and record of ruling against hospitals.

## VIII.  MEDICAID §1115 WAIVER PROGRAMS AND THE MEDICARE DSH CALCULATION

72.    States may elect to provide medical assistance through pilot and demonstration projects (or "§1115 waivers"), which are authorized under §1115 of the Social Security Act, 42 U.S.C. §1315.

73.    Funding for such projects, under which the Secretary may waive otherwise applicable requirements of Title XIX, is "to the extent and for the period prescribed by the Secretary . . . regarded as expenditures under the [Title XIX] State Plan." 42 U.S.C. §1315(a)(2)(A).

74.    Section 1115 waivers are a variation on traditional state plan programs in which the Secretary may "waive" compliance with some of these otherwise applicable Medicaid regulations.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

75.    Waivers are widely and routinely used by states to "waive" the requirements that medical assistance will be provided only for persons who qualify for traditional Medicaid eligibility.

76.    A "waiver" of the relevant requirements allows states to receive federal matching funding for inpatient services for non-"Medicaid eligible" persons.  This is functionally and substantially equivalent to covering the exact same services through a Medicaid DSH adjustment under a traditional state plan model.

77.    Historically, the Secretary always treated "waiver" days and general assistance (or similar) days funded under a State Plan through Medicaid DSH adjustment identically.  Under PM A-99-62, the Secretary did not recognize *either* hospital days covered under §1115 waiver programs *or* days of patients receiving services through a State Plan in the Medicare DSH calculation, unless the patients were eligible, or could qualify, for traditional "Medicaid" benefits under the State Plan.  (In waiver states, such patients are referred to as "hypothetical Medicaid eligible.")

78.    In 2000, however, the Secretary amended 42 C.F.R. §412.106(b)(4) to expressly permit hospitals to include in the numerator of the Medicare DSH calculation at 42 U.S.C. §1395ww(d)(5)(F)(vi)(II), all inpatient days funded through §1115 demonstration projects and "regarded as" having been funded under a Title XIX State Plan.

79.    Under the 2000 amendment of the rules, the Secretary permitted hospitals located in §1115 waiver states to count the days of any patient for which the hospital received funding

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

regarded as having flowed through a State Plan, regardless of whether the patients qualified for or could qualify for traditional "Medicaid benefits." Interim Final Rule, 65 Fed. Reg. 3136, 3137 (January 20, 2000). The basis for this change was that, on or after January 20, 2000, Title XI waiver payments would henceforth be "regarded as" expenditures under Title XIX.

80. In abandoning the need for traditional Medicaid eligibility for days attributable to such non-Medicaid "expansion populations", as a mandatory condition of such days being counted in the numerator of the Medicaid low-income fraction, the Secretary pronounced that:

> allowing hospitals to include the [entire] section 1115 waiver population in the Medicare DSH calculation is fully consistent with the Congressional goals of the Medicare DSH adjustment to recognize *higher cost to hospitals of treating low income individuals* covered under Medicaid. Therefore, inpatient hospital *days* for these patients *eligible for Title XIX matching payments under a Section 1115 waiver are to be included* as Medicaid days for purposes of the Medicare DSH calculation. (Emphasis added.)

65 Fed. Reg. at 3137.

81. The Secretary simultaneously acknowledged that this approach had a discriminatory impact on hospitals in States not operating under §1115 waivers that fund covered charity care of GA patients through Medicaid DSH payments, and promised to further consider the issue. Id.

82. The Secretary's decision to permit inpatient days for non-Medicaid eligible patients to be counted in waiver states once they were regarded as funded under Title XI was ratified by Congress in the Deficit Reduction Act of 2005. In contrast, Congress never ratified or

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

expressed approval for the Secretary's decision under PM A-99-62 to prevent hospitals from counting low-income days that actually are (not merely regarded as) funded under Title XIX.

## IX. THE HOSPITALS' ADMINISTRATIVE APPEALS

83.    In computing Plaintiffs' Medicare DSH adjustments for the fiscal years covered in this Complaint, the Medicare Fiscal Intermediaries, Noridian Administrative Services and Wisconsin Physician Services (collectively referred to as the "Intermediary"), refused to allow the patient days associated with services provided by the Plaintiff Hospitals to patients eligible for medical assistance under the MIDSH and GAUDSH programs.   Excluding those days unlawfully reduced the Plaintiffs' DSH percentages, and reduced the amount of Medicare reimbursement the Plaintiffs were paid.   Plaintiffs timely appealed the exclusion of the MI and GAU populations from the Medicaid Low-Income Proxy to the PRRB, which were pursued as group appeals.

84.    The eleven (11) group appeals were consolidated for hearing purposes, collectively known as the Washington General Assistance Days Group.   The hearing before the PRRB was based upon the record submitted by the parties.

85.    On September 12, 2013, the PRRB issued its decision, that the Intermediary properly refused to include Washington MI and GAU program days in the numerator of the Provider's Medicaid proxy.   The PRRB failed and refused to consider the recent federal district court opinion in Nazareth Hosp. v. Sebelius, Case No. 10CV3515, U.S. District Court for the Eastern District of Pennsylvania (both interim Order dated July 12, 2012 and Court Order and

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

Memorandum issued on April 8, 2013) in connection with this decision.  Plaintiffs submitted

supplemental position papers to address this new case law, which were improperly rejected by

the PRRB.

86.    Further, in earlier determinations, the PRRB found it did not have jurisdiction

over the following specific appeals:

Holy Family Hospital, Provider No. 50-0077, FYE 7/31/1994;
Holy Family Hospital, Provider No. 50-0077, FYE 7/31/1995; and
Providence General Medical Center, Provider No. 50-0014, FYE 12/31/1998.
(PRRB Jurisdiction decision dated February 21, 2013, PRRB Case No. 09-1743G).

Southwest Washington Medical Center, Provider No. 50-0050, FYE 9/30/1994;
Southwest Washington Medical Center, Provider No. 50-0050, FYE 9/30/1995;
Stevens Hospital, Provider No. 50-0003, FYE 12/31/1994;
Stevens Hospital, Provider No. 50-0003, FYE 12/31/1995; and
Harrison Memorial Hospital, Provider No. 50-0039, FYE 4/30/1995.
(PRRB Jurisdiction decision dated March 15, 2013, PRRB Case N. 00-3186G).

Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1994;
Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1995;
Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1996;
Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1997;
Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1998;
Swedish Medical Center-Providence, Provider No. 50-0025, FYE 12/31/1994;
Swedish Medical Center-Providence, Provider No. 50-0025, FYE 12/31/1996;
Swedish Medical Center-Providence, Provider No. 50-0025, FYE 12/31/1997; and
Swedish Medical Center-Providence, Provider No. 50-0025, FYE 12/31/1998.
(PRRB Jurisdiction decision dated April 15, 2013, PRRB Case No. 09-1581GC).

Harborview Medical Center, Provider No. 50-0064, FYE 6/30/1992; and
Harborview Medical Center, Provider No. 50-0064, FYE 6/30/1993.
(PRRB Jurisdiction decision dated June 28, 2013, PRRB Case No. 09-1503GC).

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

This rejection of jurisdiction is contrary to the provisions of 42 U.S.C. §1395oo(a) and unfairly denies these Hospitals' their right to seek administrative review after the issuance of a revised NPR, or otherwise pursue various components of an appeal issue.

87.    The CMS Administrator decided to review the PRRB's decision pursuant to 42 U.S.C. §1395oo(f) and 42 C.F.R. §405.1875  On November 27, 2013, the CMS Administrator issued a final decision which affirmed the above decisions of the PRRB.    By law, the Administrator's decision is the final decision of the Secretary.

## COUNT I

### THE SECRETARY'S FINAL DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS CONTRARY TO LAW.

88.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through 87 as if fully set forth at length below.

89.    The Secretary's decision issued November 27, 2013, refusing to allow the Plaintiff Hospitals to include the patient days associated with medical assistance provided to low-income MI and GAU patients for purposes of determining the Hospital's Medicare disproportionate share payments, is unlawful.

90.    First, that decision is arbitrary and capricious and an abuse of discretion because it is the product of two diametrically opposite interpretations of the meaning of the term "medical assistance" in the same Medicare DSH provision – one (applied to Plaintiffs) that absolutely requires a person to be "Medicaid-eligible" for a hospital in Washington State to count the day in

Complaint: Page 29

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

the disproportionate percentage calculation, and another that presumes that Medicaid eligibility is neither essential nor required for patient days to be recognized in states in which identical services are covered under a Section 1115 waiver model and regarded as "funded" under Title XIX.

91.     The Secretary's approach is also arbitrary and capricious because it conflicts with Congressional intent, as reflected in the Statute's plain meaning and its legislative history, and the Congressional policy the Secretary cited in the preamble to justify abandoning the Medicaid eligibility requirement in the Interim Final Rule.

92.     Under the DSH Statute, as long as a patient is eligible for medical assistance under a State Plan approved under Title XIX of the Social Security Act, for a particular day for which he or she receives inpatient hospital services, that day must be counted as a Medicaid day for purposes of the Medicare DSH payment.  The DSH Statute does not permit the Secretary's interpretation and application in this case.

93.     The purpose of the Medicare DSH Statute is to ensure supplemental reimbursements to hospitals that provide care to a disproportionate volume of "low income patients."  See 42 U.S.C. §1396a(a)(13)(A)(iv).

94.     42 U.S.C. §1395ww(d)(F)(vi) does not limit the low income days that may be counted to only "traditional Medicaid beneficiaries" (individuals who are categorically or medically needy), but literally extends to all low-income days for which persons are eligible for days of inpatient coverage under an approved State Plan.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

95.     The Washington MIDSH and GAUDSH programs are an integral "medical assistance" component of the Washington State Plan that was approved by the Secretary under Title XIX.

96.     The State's payments to Plaintiffs on account of MIDSH and GAUSH patients are federally funded under Title XIX to the same extent as payments made to hospitals on account of individuals who qualify for "Medicaid" benefits.

97.     The purpose of the DSH adjustment – to compensate hospitals for the additional costs associated with treating disproportionate volumes of low-income patients – can only validly be accomplished if Washington's MIDSH and GAUDSH days are included in the DSH calculation.

98.     The Secretary's determination that MIDSH and GAUDSH days must be excluded from the calculation of Plaintiffs' Medicare DSH payments for the fiscal years at issue, because these patients are not eligible for "Medicaid," is inconsistent with the Secretary's own most recent interpretation of the Medicare DSH statute and with the plain meaning and clear purpose of the Medicare DSH statute as construed in Portland Adventist.  It must therefore be overturned as arbitrary and capricious and not in accordance with the law.

99.     Because the Secretary's inconsistent interpretation and application of the regulation as applied outside of waiver states contravenes the Medicare DSH statute and frustrates Congressional intent, it is due no deference under Chevron U.S.A. Inc. v. Nat'l Res. Def. Council, Inc., 467 U.S. 837 (1984), and is invalid under 5 U.S.C. §706.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

100.    The Secretary is not entitled to deference because the Administrator has a bias against hospitals and makes decisions based upon monetary reasons rather than based upon policy rules and regulations.

## COUNT II

### THE SECRETARY'S INTERPRETATION IS ARBITRARY, CAPRICIOUS AND DISCRIMINATORY AND, THEREFORE, INVALID UNDER THE ADMINISTRATIVE PROCEDURES ACT.

101.    Plaintiffs hereby incorporate by reference paragraphs 1 through 100 above as though set forth herein.

102.    The Secretary's action is subject to judicial review pursuant to the applicable provisions of the APA.  42 U.S.C. §1395oo(f)(1).

103.    Under the APA, a reviewing court must set aside agency action if, *inter alia*, it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

104.    The Secretary's decision must be set aside as arbitrary and capricious because it is inconsistent with the Secretary's own prior and subsequent interpretations of the statute.

105.    There is no valid explanation or basis for precluding Plaintiffs from counting MIDSH and GAUDSH days in their Medicare DSH calculations after the Secretary construed the Medicare DSH statute in January 2000 as <u>not</u> requiring Medicaid eligibility, and as permitting substantially equivalent hospitals in waiver states to count substantially equivalent days in their Medicare DSH calculations.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

106.    The Secretary's disallowance of Plaintiffs' MIDSH and GAUDSH days on this basis also is arbitrary and capricious in light of the Secretary's disparate treatment of hospitals located in §1115 waiver states, where low income days regarded as being funded under an approved State Plan may be included in the Medicare DSH calculation even if the low-income patient is not eligible for traditional Medicaid benefits.

107.    Washington MIDSH and GAUDSH patients are financially equivalent to (or poorer than) patients residing in §1115 states and/or regions whose hospitals days are permitted to be included in the Medicare DSH calculation under the Secretary's January 2000 regulatory amendment.  Similarly, Plaintiffs are substantially equivalent to hospitals that are permitted to count such days in Section 1115 waiver states.

108.    The Secretary's refusal to permit Plaintiffs (and other Washington hospitals) to include MIDSH and GAUSH days in the same calculation under which substantially equivalent patients may be included in §1115 waiver states discriminates against similarly situated hospitals without a valid or rational basis.

109.    The stated purpose of amending 42 C.F.R. §412.106, to allow hospitals located in §1115 states and/or regions to include §1115 waiver patients in the Medicare DSH calculation, regardless of their Medicaid eligibility, was to be consistent with the Congressional goals of the Medicare DSH adjustment to recognize high costs to hospitals of treating large volumes of low-income individuals under Medicaid.  65 Fed. Reg. 3136 at 3137.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

110.    The Secretary's published rationale at 65 Fed. Reg. 3136 for disavowing the need for Medicaid eligibility for person who receive hospitals care funded under §1115 waiver programs applies with equal force to, and cannot logically be distinguished from coverage of services of substantially equivalent low-income patients whose care is directly paid under Title XIX through Medicaid DSH adjustments.    In both cases, hospitals participating in Medicare incur the same additional costs.

111.    The Secretary expressly acknowledged in the Final Interim Rule that her recognition of only non-Medicaid expansion days and not DSH days of "general assistance or charity care patients," would "advantage [hospitals in States] that have a section 1115 waiver in place" 65 Fed. Reg. 47054, 47087 (August 1, 2000).

112.    While the Secretary acknowledged the discriminatory impact of this approach, she failed to supply any meaningful or rational justification for this disparate treatment of Plaintiffs (and of other similarly situated hospitals not located in states that have a section 1115 waiver in place).

113.    Denying hospitals that treat large numbers of low-income MIDSH and GAUDSH patients funded under an approved State Plan the right to include such patients in their Medicare DSH calculation does not rationally accomplish the Secretary's stated purpose of amending 42 C.F.R. §412.106 in January 2000.

114.    Similarly, in her decision on the consolidated appeals, the Administrator did not rationally justify her refusal to recognize MIDSH and GAUDSH days funded through Medicaid

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

DSH adjustments under Title XIX, while recognizing days attributable to non-Medicaid recipients that are funded under §1115 waivers.

115.    The Secretary's disparate rejection of Plaintiffs' non-Medicaid low-income days and recognition of substantially equivalent patient days for hospitals located in states that deliver medical assistance through §1115 waiver programs is arbitrary and capricious, and an abuse of discretion and is, therefore, invalid under 5 U.S.C. §706.

## COUNT III

### THE SECRETARY'S DISCRIMINATORY TREATMENT OF NON §1115 HOSPITALS VIOLATES PLAINTIFFS' RIGHTS UNDER THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

116.    Plaintiffs hereby incorporate by reference paragraphs 1 through 115 above as though set forth herein.

117.    In January 2000, the Secretary expressly amended 42 C.F.R. §412.106(b)(4) to permit hospitals to include patients covered under §1115 programs in the Medicare DSH calculation whether or not the patients qualify, or could qualify, for traditional "Medicaid" benefits.

118.    The Secretary's simultaneous refusal to recognize MIDSH and GAUDSH days in the Medicare DSH calculation on the grounds these patients are not "eligible for Medicaid" discriminates against Plaintiffs (and other similar hospitals located in non-§1115 states).

119.    Agency action must be sustained or overturned based solely on the rationale actually provided by the agency.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

120. The Secretary expressly recognized the discriminatory impact of her bifurcated and opposite application of the same Medicare DSH provision. Yet the Secretary's stated purpose for disavowing the need for Medicaid eligibility for such non-Medicaid §1115 expansion populations - to conform to Congressional intent to protect hospitals treating large volumes of low-income patients – does not provide a rational basis for discriminatory treatment. Indeed, this same rationale applies with equal force, if not greater force, to MIDSH and GAUSH days that are directly funded under Title XIX.

121. There is no rational basis for the Secretary's internally inconsistent application of the same statute and, the decision to deny the same protections to Plaintiffs (or other similarly situated hospitals that are located outside of states operating under §1115 waivers) that are extended to hospitals located in §1115 waiver states. Consequently, the Secretary's discriminatory treatment of Plaintiffs violates Plaintiffs rights under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

## COUNT IV

### THE SECRETARY'S JURISDICTION DECISION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS CONTRARY TO LAW.

122. Plaintiffs hereby incorporate by reference paragraphs 1 through 121 above as though set forth herein.

123. The Secretary's decision denying jurisdiction for the following appeals:

Holy Family Hospital, Provider No. 50-0077, FYE 7/31/1994;
Holy Family Hospital, Provider No. 50-0077, FYE 7/31/1995; and
Providence General Medical Center, Provider No. 50-0014, FYE 12/31/1998.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

1

(PRRB Jurisdiction decision dated February 21, 2013, PRRB Case No. 09-1743G).

2

Southwest Washington Medical Center, Provider No. 50-0050, FYE 9/30/1994;
Southwest Washington Medical Center, Provider No. 50-0050, FYE 9/30/1995;

3

Stevens Hospital, Provider No. 50-0003, FYE 12/31/1994;

4

Stevens Hospital, Provider No. 50-0003, FYE 12/31/1995; and
Harrison Memorial Hospital, Provider No. 50-0039, FYE 4/30/1995.

5

(PRRB Jurisdiction decision dated March 15, 2013, PRRB Case N. 00-3186G).

6

Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1994;

7

Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1995;
Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1996;

8

Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1997;

9

Swedish Medical Center, Provider No. 50-0027, FYE 12/31/1998;
Swedish Medical Center-Providence, Provider No. 50-0025, FYE 12/31/1994;

10

Swedish Medical Center-Providence, Provider No. 50-0025, FYE 12/31/1996;

11

Swedish Medical Center-Providence, Provider No. 50-0025, FYE 12/31/1997; and
Swedish Medical Center-Providence, Provider No. 50-0025, FYE 12/31/1998.

12

(PRRB Jurisdiction decision dated April 15, 2013, PRRB Case No. 09-1581GC).

13

Harborview Medical Center, Provider No. 50-0064, FYE 6/30/1992; and

14

Harborview Medical Center, Provider No. 50-0064, FYE 6/30/1993.
(PRRB Jurisdiction decision dated June 28, 2013, PRRB Case No. 09-1503GC).

15

16

is contrary to the provisions of 42 U.S.C. §139500(a) and unfairly denies these Hospitals their

17

rights to seek administrative review after the issuance of a revised NPR, or otherwise pursue

18

various components of an appeal issue.

19

20

**RELIEF**

21

WHEREFORE, Plaintiffs request relief as follows:

22

(1)     That this Court hold unlawful and reverse the decision issued November 27, 2013,

23

24

by the Administrator of CMS, which refused to allow MIDSH and GAUDSH hospital inpatient

25

days to be included in the Medicare DSH calculation for the Plaintiff Hospitals.

26

27

28

29

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

(2)    A declaration by the Court that the decision issued November 27, 2013, by the Administrator of CMS violates 42 U.S.C. §1395ww(d)(5)(F)(vi).

(3)    A declaration by the Court that the Secretary's application of 42 C.F.R. 412.106(b)(4) to Plaintiffs is unlawful in so far as it excludes MIDSH and GAUDSH hospital patient days from the Plaintiffs' DSH calculation in contravention of the plain meaning of 42 U.S.C. §1395ww(d)(5)(F)(vi), is otherwise arbitrary, capricious, unreasonable, unlawful, invalid, and violates the Equal Protection Clause of the United States Constitution.

(4)    An order requiring that the Secretary to remand this matter to PRRB and Intermediary, and within 90 days of receipt of Plaintiffs' documentation, (i) to recalculate Plaintiffs' Medicare disproportionate patient percentage for the fiscal years identified herein, based upon the foregoing, and based upon the information submitted by Plaintiffs with respect to all patient days for which a patient was eligible for medical assistance through the MIDSH and GAUDSH programs pursuant to the State Plan approved under Title XIX and (ii) pay to Plaintiffs the additional amounts due under the resulting DSH recalculation, plus interest in accordance with 42 U.S.C. §1395oo(f)(2).

(5)    A declaration that this Court shall retain jurisdiction in this matter until the Secretary's recalculation of Plaintiffs' Medicare DSH percentages and subsequent payment to Plaintiffs of the additional amounts due is complete, including the additional amounts based upon the inclusion of MIDSH and GAUDSH hospital patient days.

(6)    Attorney's fees and costs of suit incurred by Plaintiffs as permitted by law.

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

(7)    Such other relief as this Court deems just and equitable.

Dated this 5th day of February, 2014.

Respectfully submitted:
SHERMAN LAW OFFICE, PLLC


By: *Teresa A. Sherman*
TERESA A. SHERMAN
WSBA No. 14637
Attorney for Plaintiffs
Sherman Law Office, PLLC
1212 N. Washington, Suite 210
Spokane, WA 99201
Telephone: (509) 324-3331
Fax:  (509) 324-3364
Email: tsherman@tshermanlaw.com

rg d2/5/2014
C:\TAS\QRS\WACONSOLIDATEDGROUP\COMPLAINT.DOC

Complaint:  Page 39

Sherman Law Office, PLLC
1212 N. Washington
Rock Pointe, Suite 210
Spokane, WA 99201
(509) 324-3331
Facsimile (509) 324-3364

EXHIBIT "A"

ATTACHMENT 4.19-A
Part I, Page 24

STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT
State_____WASHINGTON_____

c.  Except as specified in Section 1923 (d) (2), no eligible
    hospital may receive a disproportionate share payment
    adjustment unless the hospital has at least two
    obstetricians who have staff privileges at the hospital
    and who have agreed to provide obstetric services to
    individuals who are entitled to Medicaid services.

Hospitals deemed eligible under the above criteria shall
receive disproportionate share payment amounts which in total
will equal the funding set by the State's appropriations act
for LIDSH.  The process of apportioning payments to individual
hospitals is as follows:

A single base payment is selected that distributes the total
LIDSH appropriation.  For each hospital, the base payment is
multiplied by the hospitals low income utilization factor
standardized to one, by the hospital's most recent Fiscal Year
case mix index, currently 1993, and by the hospital's
subsequent year's estimated admissions of Title XIX eligibles.
The results for all hospitals are summed and compared to the
appropriated amount.

If the sum differs from the appropriated amount, a new base
payment figure is selected.  The selection of base payment
figures continues until the sum of the calculated payment
equals the appropriated amount.  The appropriation amount may
vary from year to year.  Each hospital's disproportionate
share payment is made periodically.

2.  Medically Indigent Disproportionate Share Hospital (MIDSH)
    payment

    Effective July 1, 1994, hospitals shall be deemed eligible for
    a MIDSH payment if:

    a.  The hospital is an in-state or border area hospital; and,

    b.  The hospital provides services to low-income, Medically
        Indigent (MI) patients.  MI persons are low-income
        individuals who are not eligible for any health care
        coverage and who are encountering an emergency medical
        condition; and,

TN# 98-07   Approval Date: 8/4/99  Effective Date: 12/15/98
Supersedes
TN# 97-09

ATTACHMENT 4.19-A
Part I, Page 25

STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT
    State_____WASHINGTON_____

c.    The hospital has a low-income utilization rate of one
      percent or more; and,

d.    The hospital has at least two obstetricians with staff
      privileges at the hospital who have agreed to provide
      obstetric services to individuals who are eligible for
      Medicaid, provided the hospital offers non-emergency
      obstetric services to the general population and is not
      a rural hospital.

Hospitals qualifying for MIDSH payments will receive a
periodic per claim payment. The payment is determined for
each hospital by reducing the regular Medicaid payment by a
ratable reduction factor and equivalency factor adjustment.
The ratable reduction is inversely proportional to the percent
of a hospital's gross revenue for Medicare, Medicaid, Labor
and Industries, and charity. The equivalency factor reduction
is a budget neutral adjustment applied to all hospitals. The
equivalency factor ensures that MIDSH payments will equal the
State's estimated MIDSH appropriation level. Effective for
admissions on or after July 1, 1994, the payment is reduced
further by multiplying it by 97 percent. The resulting
payment is directly related to the hospital's volume of
services provided to low-income MI patients. This payment
reduction adjustment is applied to the MIDSH methodology
established and in effect as of September 30, 1991 in
accordance with Section 3(b) of the "Medicaid Voluntary
Contributions and Provider-Specific Tax Amendment of 1991."

3.    General  Assistance  Unemployable  Disproportionate  Share
      Hospital (GAUDSH) payment

      Effective July 1, 1994, hospitals shall be deemed eligible for
      a GAUDSH payment if:

      a.    The hospital is an in-state or border area hospital; and,

---

TN# <u>98-07</u>    Approval Date: <u>8/4/99</u>    Effective Date: <u>12/15/98</u>
Supersedes
TN# <u>97-09</u>

Complaint-page 41

ATTACHMENT 4.19-A
Part I, Page 26

STATE PLAN UNDER TITLE XIX OF THE SOCIAL SECURITY ACT
State_____WASHINGTON_____

   b.   The hospital provides services to low-income, General
Assistance Unemployable (GAU) patients. GAU persons are
low-income individuals who are not eligible for any
health coverage and who are encountering a medical
condition; and,

   c.   The hospital has a low-income utilization rate of one
percent or more; and,

   d.   The hospital has at least two obstetricians with staff
privileges at the hospital who have agreed to provide
obstetric services to individuals who are eligible for
Medicaid, provided the hospital offers non-emergency
obstetric services to the general population and is not
a rural hospital.

Hospitals qualifying for GAUDSH payments will receive a
periodic per claim payment. The payment is determined for
each hospital by reducing the regular Medicaid payment by a
ratable reduction factor and equivalency factor adjustment.
The ratable reduction is inversely proportional to the percent
of a hospital's gross revenue for Medicare, Medicaid, Labor
and Industries, and charity. The equivalency factor reduction
is a budget neutral adjustment applied to all hospitals. The
equivalency factor insures that GAUDSH payments will equal the
State's estimated GAUDSH appropriation level.

4.   Small Rural Hospital Assistance Program Disproportionate Share
Hospital

Effective July 1, 1994, hospitals shall be deemed eligible for
a Small Rural Hospital Assistance Program Disproportionate
Share Hospital (SRHAPDSH) payment if:

   a.   The hospital is an in-state (Washington) hospital; and

   b.   The hospital provides at least one percent of its
services to low-income patients in rural areas of the
state; and

---

TN# 98-07    Approval Date: 8/4/99   Effective Date: 12/15/98
Supersedes
TN# 97-09